*In re* MARRIAGE OF KOENIG (Krista Marie Koenig, by and through her Mother, Shirley Jewel Koenig, Petitioner-Appellant, v. Harold Joseph Koenig *et al.*, Respondents-Appellees).

First District (2nd Division)   Nos. 1—89—3325, 1—90—0668 cons.

Opinion filed March 28, 1991.

Allan W. Masters, of Chicago (Mary Ellen Dienes, of counsel), for appellant.

Schiller, DuCanto & Fleck, Ltd., of Chicago (Sarane C. Siewerth, of counsel), for appellee Harold Joseph Koenig.

Marc R. Kadish, of Chicago, for appellee Donald Tegeler.

JUSTICE HARTMAN delivered the opinion of the court:

Petitioner, Shirley Jewel Koenig (Shirley), appeals from the circuit court's dismissal of her petition seeking a paternity declaration affecting both respondents. The circuit court dismissed her petition as to respondent Donald Tegeler (Donald) on December 2, 1989, and dismissed her petition as to respondent Harold Joseph Koenig (Harold) on February 21, 1990. Timely appeals were taken from both orders, which have been consolidated.

We are asked to consider whether the circuit court erred in dismissing the petition to establish parentage, purporting to be brought on behalf of the minor child, Krista Marie Koenig (Krista), because the child's mother, Shirley, lacked standing to bring it. For reasons later stated, we affirm.

Shirley and Harold were married on September 29, 1984. One daughter, Krista, was born on March 17, 1985. On October 28, 1985, Harold petitioned for dissolution of marriage, charging Shirley with various acts of extreme and repeated mental cruelty and questioning

his role in Krista's parentage. Shirley denied the charges and the challenge to Krista's paternal parentage in an answer filed November 18, 1985. She filed a counterpetition for dissolution in which she repeatedly referred to Krista as Harold and Shirley's baby.

Shirley later withdrew her counterpetition, and the circuit court entered an agreed judgment of dissolution in the nature of a default matter on April 28, 1986. The judgment incorporated a dissolution settlement reached and signed by Harold and Shirley. That agreement found that "one child was born to this marriage," naming Krista. It further provided that Harold "shall have the sole permanent care, custody, control and education" of Krista. The judgment stated that "one child was born to the parties, namely: KRISTA MARIE KOENIG, *** [on] March 17, 1985." The judgment gave Harold sole permanent custody of Krista. Shirley was granted visitation rights. A certified copy of Krista's birth certificate, showing Harold as Krista's father, was filed in the course of later proceedings.

During the next three years, both Harold and Shirley filed various papers in the circuit court alleging that the other was mistreating Krista, culminating in Harold's filing of an "emergency petition for injunctive and other relief," seeking the suspension of Shirley's visitation rights and the appointment of an attorney to act in Krista's best interests.

On March 8, 1989, Shirley filed a petition for a rule to show cause and a petition to declare the parentage of Krista. Count I of the petition sought, among other things, enforcement of Shirley's visitation rights and a change of Krista's custody to Shirley. In count II, as Krista's "natural guardian," she sought on the child's behalf a declaration of parentage pursuant to the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, par. 2501 *et seq.*) (Parentage Act). Shirley claimed that, at the time she married Harold, she was pregnant as a result of sexual intercourse with Donald in July 1984. Shirley alleged that she had had no sexual relations with Harold before their marriage in September of 1984.

The circuit court appointed Joel Schaps to serve as Krista's attorney on March 10, 1989, and his appearance was filed on March 31, 1989. Schaps also has been referred to as Krista's guardian *ad litem* by the court and the parties; however, no formal appointment to that effect appears in the record.

Donald moved to strike the petition to declare paternity, arguing that (1) the dissolution of marriage agreement, signed by both Shirley and Harold, acknowledged that Krista was born to both parties and constituted a binding admission on Shirley's part; (2) Krista's birth

certificate was signed by Shirley, designating Harold as the natural father; and (3) the action was time barred under section 8 of the Parentage Act because it was filed more than two years after Shirley admitted having knowledge of the relevant facts relating to the issue of paternity. Shirley's response claimed, among other things, that (1) Krista was not a party to the divorce action and was entitled to have the issue of paternity resolved; (2) the two-year limitation period provided by section 8 of the Parentage Act did not apply and could not be raised by Donald in any event; and (3) Shirley had standing to bring this action as Krista's natural guardian. The circuit court granted Donald's motion to strike the paternity petition following a hearing on November 2, 1989. The court questioned whether it was in Krista's best interest to be told at that point in time that Harold was not her father, but that Donald, a total stranger to her, was her father. Turning to the legal issue, the court ruled that under the law Shirley did not have standing to raise the paternity issue.

Harold evidently filed, with leave of court, an amended response to Shirley's petition, adopting Donald's arguments. At the subsequent hearing on the motion, the circuit court struck the paternity action, again finding that Shirley lacked the standing to bring such an action on the minor child's behalf.

Shirley appeals from both dismissal orders.

I

Shirley identifies circuit court error in its having determined that she lacked standing to file the petition questioning paternity on Krista's behalf.

■■ ■ In support of her argument, Shirley urges that a "dismissal of the petition was not in the child's best interests because it deprived the child of a forum in which to establish parentage." Section 7(b) of the Parentage Act provides, in part, that "[a]n action to declare the non-existence of the parent and child relationship may be brought by the child, the natural mother or a man presumed to be the father." (Ill. Rev. Stat. 1987, ch. 40, par. 2507(b).) Absent her judicial admission as to Harold's paternity (see *State Security Insurance Co. v. Linton* (1978), 67 Ill. App. 3d 480, 384 N.E.2d 718), Shirley might have challenged the existence of a parent and child relationship between Harold and Krista on her own behalf, without involving Krista. She brought no action. Section 8 of the Parentage Act, with its two-year limitation provision (Ill. Rev. Stat. 1987, ch. 40, par. 2508) might also have played a part in Shirley's inaction. In refraining from having this matter resolved, Shirley has permitted four years to elapse, resulting

in the establishment of a concomitant relational development between Harold and Krista, together with his ongoing financial support for the child. The circuit court was faced with the choice of either allowing Donald, a stranger, who disclaimed parenthood and wanted nothing to do with Krista, to be named Krista's father, or permitting Harold to continue his role as Krista's supportive father and primary caretaker from her first year of existence, to which the parties had agreed years before. Under these circumstances the circuit court understandably challenged Shirley's insistence that Krista's best interests were involved in this controversy.[1]

## II

Shirley disputes the existence of any legal basis upon which to support the circuit court's conclusion that she lacked standing to file the petition on Krista's behalf. The Parentage Act also provides that "[i]f any party is a minor, he or she may be represented by his or her general guardian or a guardian ad litem appointed by the court." (Ill. Rev. Stat. 1987, ch. 40, par. 2507(c).) The legislature has thereby limited a minor child's representative to either his or her general guardian or court appointed guardian *ad litem*. Although the Act does not itself define "general guardian," similar statutory provisions have been defined as "the guardian of the person, or of all the property of the ward" and, absent appointment by the court, does not include a minor's natural mother (*Shearer v. Coats* (S.D. 1989), 434 N.W.2d 596, 598); "one appointed by the Supreme, or Surrogate's Court" (*In re McGuire's Estate* (1921), 115 Misc. 84, 189 N.Y.S. 62, 63); and "one who has the general care and control of the person and estate of his ward" (Black's Law Dictionary 635 (5th ed. 1979)). In the case *sub judice*, Shirley does not qualify as Krista's general guardian because Harold was given "the sole permanent care, custody, control and education of the minor child" in the couple's divorce settlement and agreed judgment. Nor was Shirley appointed Krista's guardian *ad litem*. Under the statutory language and circumstances of this case, Shirley lacks standing to bring the paternity petition on Krista's behalf.

Further support for this conclusion can be found in *In re Marriage of Ingram* (1988), 176 Ill. App. 3d 413, 531 N.E.2d 97. There, the child's mother and father were granted a dissolution by the circuit

---

[1]At oral argument, Shirley's counsel represented that a petition for change of custody, necessarily involving Krista's best interests, is presently pending in the circuit court.

court, which reserved the issue of child custody. Several months later, the mother moved for summary judgment, alleging that the father was not the child's biological father. On appeal of the circuit court's order granting custody to the father, the mother argued that her action should be construed as one brought on behalf of the child, within the meaning of the Act. The appellate court noted that the mother "seeks to deprive the child of the only father he has known, thereby depriving [him] of a source of financial and emotional support" and refused to hold such actions to be "on the child's behalf." (*In re Marriage of Ingram*, 176 Ill. App. 3d at 418. See also *McDonald v. McGowan* (1987), 163 Ill. App. 3d 697, 516 N.E.2d 934 (court properly dismissed paternity action brought on behalf of minor child because petitioner was neither the child's general guardian nor guardian *ad litem* and his interests conflicted with those of the minor).) Shirley, here, attempts to do the very same thing.

Shirley also argues that *Simcox v. Simcox* (1989), 131 Ill. 2d 491, 546 N.E.2d 609, controls this issue because the supreme court there upheld a paternity action virtually identical to that at issue here. *Simcox*, however, is factually distinguishable from the instant case because the petitioner there was the child's mother *and* custodial parent. Here, Shirley does not have custody of Krista. *Simcox*, therefore, does not address the issue presented here.

### III

■ Shirley also claims error in the circuit court's failure to appoint a guardian *ad litem* for Krista. At bar, the court appointed Schaps to serve as Krista's attorney; however, at various times during the proceedings, the court referred to Schaps as the child's "guardian." The order which appointed Schaps to the action used the word "attorney," and Schaps filed his appearance as the child's attorney. Nevertheless, Schaps' role as attorney rather than guardian *ad litem* in this matter is one which expands the protection given to a child. The Historical and Practice Notes to section 506 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 506), which authorizes the appointment of an attorney for the child, observe:

> "The importance of providing children with their own attorneys in family litigations was stressed in *Smith v. Organization of Foster Families*, 97 S. Ct. 2094, 53 L. Ed. 2d 14, 431 U.S. 816 (1977). In *Smith,* which involved a challenge to the New York State procedures for removal of foster children, the Supreme

Court observed that parents do not necessarily speak for the child:

[A]ll contend that the position they advocate is most in accord with the rights and interest of the children. In this situation, the District Court properly appointed independent counsel to represent the children, so that the Court could have the benefit of an *independent advocate for the welfare* [emphasis in original] *of the children, unprejudiced by the possibly conflicting interests and desires of the other parties.*" (Emphasis added.) (Ill. Ann. Stat., ch. 40, par. 506, Historical & Practice Notes, at 631 (Smith-Hurd 1980).)

It is true that under certain circumstances, the circuit court has an obligation to appoint a guardian *ad litem*, particularly when a minor is without proper representation (see *Majidi v. Palmer* (1988), 175 Ill. App. 3d 679, 685, 530 N.E.2d 66; *McDonald v. McGowan*, 163 Ill. App. 3d at 700; *Roth v. Roth* (1977), 52 Ill. App. 3d 220, 226, 367 N.E.2d 442); however, a guardian *ad litem* need not be appointed in every case and is not mandatory. *Klawitter v. Crawford* (1989), 185 Ill. App. 3d 778, 788, 541 N.E.2d 1159.

At bar, Krista's custodial parent asked the court to appoint an attorney to act in the child's best interests. Schaps filed an appearance. He attended some hearings, but never joined or intervened in Shirley's petition to declare paternity, although he had the authority to do so. His failure to involve Krista could well have been construed by the circuit court as acting in the child's best interests because a determination of a child's biological father through a paternity action is not always in the child's best interest. (*In re Custody of D.A.* (1990), 201 Ill. App. 3d 810, 823, 558 N.E.2d 1355.) Under the facts present in the case at bar, Krista's interests were adequately protected so as not to necessitate the additional appointment of a guardian *ad litem*, especially in view of the fact that the child already was represented by an appointed attorney.

For the foregoing reasons, the judgment of the circuit court must be affirmed.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.