ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee and Counter-defendant-Appellee, v. ROY D. HUTCHESON *et al.*, Defendants-Appellants (American States Insurance Company, Intervening Counterplaintiff-Appellant; Roy D. Hutcheson *et al.*, Third-Party Plaintiffs-Appellants; General Casualty Company of Illinois, Third-Party Defendant-Appellee).

Fifth District   No. 5—91—0372

Opinion filed July 29, 1992.

Brian P. McGarry, of Marion, for appellants.

Fowler & Novick, of Marion, for appellee General Casualty Company of Illinois.

Brad K. Bleyer, of Bleyer & Bleyer, of Marion, for appellee Allstate Insurance Company.

JUSTICE WELCH delivered the opinion of the court:

On August 16, 1988, Roy D. Hutcheson, while driving an automobile owned by Virginia York, the mother of his girl friend, collided with another automobile. Injured in the collision was Martha Cressy, an occupant of the other car involved, who, in a separate action, sued Hutcheson for the injuries sustained. At the time of the accident, Hutcheson owned and operated an automobile service station, and he was there engaged in the business of repairing and servicing automobiles.

Although the car being driven by Hutcheson at the time of the accident was owned by York, it was actually used primarily by Hutcheson's girl friend, Christina Dunning. Dunning had express permission from York to use the vehicle as her own, and Dunning had given Hutcheson express permission to use the vehicle any time he desired and it was mutually convenient. Thus, there can be no dispute that, under most circumstances, Hutcheson was insured as a permissive user of the vehicle under the omnibus provision of York's automobile liability insurance policy, issued by Allstate Insurance Company. (*Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 342-43, 297 N.E.2d 163, 168.) However, the insurance policy issued by Allstate Insurance Company (hereinafter Allstate) also contained an automobile-business exclusion which provided,

"This coverage does not apply to liability for:
* * *

(2) Auto business operations such as repairing, servicing, testing, washing, parking, storing or the selling of autos. However, coverage does apply to you, resident relatives, your partners or the partnership in the business, or employes [*sic*] of the partnership or of the resident relative when using your insured auto."

Hutcheson also had personal-automobile liability insurance which, in most circumstances, would have provided coverage for any auto accident in which he was involved. However, that policy also contained an automobile-business exclusion which provided,

"We do not provide Liability Coverage:
* * *

6. For any person while employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking of vehicles designed for use mainly on public highways, including road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of your covered auto by you, any family member, or partner, agent or employee of you or any family member."

This policy was issued by General Casualty Company of Illinois.

Hutcheson also had garage owner's liability insurance issued by American States Insurance Company. American States Insurance Company (hereinafter American States) conceded that its policy did provide coverage for the accident and undertook to defend Hutcheson in the action brought by Cressy.

The instant suit is a declaratory judgment action brought in the circuit court of Saline County to determine whether the insurance policies issued by Allstate and General Casualty Company of Illinois (hereinafter General Casualty) provide coverage for the accident or whether coverage is excluded by the automobile-business exclusions of the two policies. The question arises because, immediately after the accident, Hutcheson told numerous people, including insurance claims adjusters, that, at the time of the accident, he had been road testing the York vehicle to determine whether repairs he had just completed were satisfactory. At trial of the declaratory judgment action, the following evidence pertinent to the issue was adduced.

Roy D. Hutcheson testified as an adverse witness that he is self-employed as the owner and operator of a service station. On August 16, 1988, he was involved in an automobile accident while driving a car owned by Virginia York. Hutcheson dated York's daughter, Christina Dunning. On the evening before the accident, Dunning had visited Hutcheson at his home behind his service station. The morning of the accident, when Dunning prepared to leave, traces of sugar were found in the fill spout of her vehicle's gas tank. Hutcheson told Dunning to take his car to her workplace while he kept hers to clean out the gas tank and engine. Hutcheson's purpose in keeping Dunning's car that day was to perform the necessary repairs. Hutcheson's employee at the service station actually performed the repairs as part of his employment that day. When asked whether at the time of the accident he had been test-driving the vehicle to check the repairs, Hutcheson replied "not really." Hutcheson was impeached with statements he had made to two claims adjusters and testimony given in deposition in which he admitted that he had been test-driving the car at the time of the accident. Hutcheson admitted at trial that the testimony he gave in deposition was the truth. Hutcheson testified that normally when he road tests a vehicle he goes in a direction different than that taken on the day of the accident. However, he sometimes takes different routes when test-driving a car. Hutcheson admitted that one of the reasons he was driving the York vehicle at the time of the accident was to test his repairs.

Robyn Lee Gott testified that she is an insurance broker. She wrote Hutcheson's garage owner's liability policy with American States. She spoke with Hutcheson on the telephone regarding the automobile accident in question. Hutcheson told Gott that at the time of the accident he had been test-driving a customer's car. Hutcheson did not explain any other reason for driving the car at the time of the accident.

Terri Gay is a claims adjuster with Allstate. She took a statement from Hutcheson regarding the accident. Hutcheson told her that he was test-driving the vehicle at the time of the accident. At the prompting of his attorney, Hutcheson also told Gay that he had had another purpose in driving the vehicle that day in that he was going to his ex-wife's house to check on a sump pump.

Harry Scroggins testified that he is self-employed as an independent claims adjuster. He participated in the investigation of the accident in question for General Casualty. He talked with Hutcheson on the telephone. Hutcheson told Scroggins that he had been road testing the vehicle at the time of the accident to check whether he had successfully removed all the sugar from the gas tank and engine. Hutcheson told Scroggins that the car belonged to a customer. Hutcheson told Scroggins that he was driving the car for an additional purpose in that he was going to check a sump pump at the house of his ex-wife. Hutcheson told Scroggins that it was a dual-purpose trip and he was killing two birds with one stone. Hutcheson was going to stop by and check the pump while he was test-driving the car. Hutcheson told Scroggins that he was just getting ready to test-drive the car when he got a telephone call from his ex-wife. Had the telephone call come two minutes later, Hutcheson would have already been gone. Hutcheson told Scroggins that he would have normally driven the same distance to test-drive a customer's car.

Also admitted into evidence were Hutcheson's sworn answers to two interrogatories filed in the action brought against Hutcheson by Cressy for personal injuries. They stated that just prior to the accident, Hutcheson was coming from his service station going to his former residence and he was test-driving the York vehicle at the time.

Hutcheson's fiancee, Christina Dunning, testified that she is the daughter of Virginia York. Dunning made the payments on the vehicle in question, but the note was in York's name. The car was primarily for Dunning's use. Hutcheson drove the vehicle often and had permission from Dunning to do so. Hutcheson and Dunning often traded cars because Hutcheson had an El Camino, while Dunning had a passenger sedan.

The evening before the accident, Dunning had gone to Hutcheson's home to visit. She spent the night there, and the next morning, sugar was discovered in her gas tank. Hutcheson told Dunning to leave her car with him for repair and to take his car to her work. Dunning left her vehicle with Hutcheson for the purpose of repair. The vehicle was left with Hutcheson primarily for repair purposes and not for his personal use. Dunning was not charged for the repair work.

Roy Dean Hutcheson testified that he had dated Dunning for about one year prior to the accident. Hutcheson often drove Dunning's vehicle, and they often traded vehicles. Hutcheson had standing permission to use Dunning's vehicle. After Dunning's vehicle was repaired on the day of the accident, Hutcheson allowed it to sit and run at the garage. It ran fine. That day, Hutcheson received a telephone call from his ex-wife asking him to check on a sump pump at the former marital residence. Hutcheson drove Dunning's car directly to his ex-wife's house. He intended to return directly to the service station. His own vehicle was unavailable as Dunning had taken it. Hutcheson had a wrecker which he could have driven. However, it is against policy to take the wrecker away from the station unless it is on business. Hutcheson admitted that one of the purposes in driving Dunning's vehicle was to test his repairs. However, that was not the main reason for driving it to his ex-wife's home. He primarily went there to check the sump pump. Hutcheson does not road test every vehicle he repairs, and normally when he road tests a vehicle he goes in a different direction than he went that day. Hutcheson did not charge Dunning for the repair work. The answers to interrogatories which were admitted into evidence were truthful. They do not mention any dual purpose for driving Dunning's car at the time of the accident. The accident happened right in front of Hutcheson's ex-wife's home as he was attempting to turn into the road leading to the house.

Admitted into evidence was the evidence deposition of Peggy Jones, Hutcheson's ex-wife. On August 16, 1988, Jones telephoned Hutcheson at his service station to ask him to check on a sump pump at the former marital residence. Hutcheson agreed to do so. Jones had asked Hutcheson to check on the pump as soon as possible as she was afraid its malfunctioning might cause a fire or flood.

At the close of the evidence, the court pronounced its ruling. The court found that Hutcheson had kept Dunning's car for the purpose of effecting repairs, that the car was repaired in the course of Hutcheson's business that day with the assistance of an employee, and that approximately two minutes before he was going to leave to test-drive

the car, Hutcheson's ex-wife telephoned and asked him to check on a sump pump in her home. Hutcheson test-drove the car while driving to his ex-wife's home, and very near the home he had a collision. Hutcheson could have used his wrecker to go to the home but chose to use the York vehicle to test-drive it. The court ruled, therefore, that the automobile-business exclusions in the Allstate and General Casualty insurance policies apply and neither policy provides coverage. A written docket-entry order was entered May 6, 1991, and a written judgment order was entered May 16, 1991.

Roy D. Hutcheson and his garage owner's liability insurer, American States, appeal. They concede that Hutcheson was test-driving the York vehicle at the time of the accident. However, they argue that the primary purpose of the trip was not to test-drive the vehicle but to check on the sump pump. The trial court did not so find, and neither do we. The evidence indicates that Hutcheson was preparing to test-drive the vehicle when his ex-wife telephoned. He took the opportunity of the test-drive to also complete the personal favor which his ex-wife had asked of him. The primary purpose of driving the York vehicle remained to test the repairs.

Nor do appellants argue that road testing a customer's vehicle would not fall within the purview of either exclusion if that were the sole purpose of the use of the vehicle. The Allstate policy includes within its exclusion the testing of autos and the General Casualty policy includes within its exclusion the road testing of autos. Appellants simply argue that, in this case, where there was a dual purpose to driving the vehicle and a special relationship between the driver and vehicle owner, the exclusion should not apply for various reasons. The first of these reasons is that the language of the automobile-business exclusions at issue here is ambiguous and, under well-known rules of construction, must be construed in favor of coverage and against application of the exclusions. We disagree.

■ A provision in an insurance policy is deemed ambiguous if it is subject to more than one reasonable interpretation. (*Economy Fire & Casualty Co. v. Bassett* (1988), 170 Ill. App. 3d 765, 769, 525 N.E.2d 539, 542.) Courts will not create an ambiguity where none exists. (*Bassett*, 170 Ill. App. 3d at 769, 525 N.E.2d at 542.) The provisions in question here are not subject to more than one reasonable interpretation. They plainly and clearly exclude coverage where an accident occurs while a customer's repaired automobile is being test-driven by a person who is engaged in the automobile business. The policy provision is clear and unambiguous.

■ Appellants next argue that the purpose of the automobile-business exclusion is not served by its application in the instant case where the driver of the vehicle was not a stranger or unknown service station employee but was instead well known to the car owner/insured. An argument similar to appellants' was advanced in *Van Vleck v. Barbee* (1983), 115 Ill. App. 3d 936, 451 N.E.2d 25.

In that case it was argued that the automobile-business exclusion clause should be declared void, as contrary to public policy, where the driver of the vehicle, a service station employee, was a relative of the insured and therefore had a special relationship with the insured. The argument was that the purpose behind the automobile-business exclusion is to protect the insured from liability where a person unknown to him, *i.e.*, an employee of the auto business, is driving the car. The appellant/plaintiff argued that since the driver was known to the insured, in fact was a relative, the exclusion should not apply.

The appellate court disagreed. It found the automobile-business exclusion to be clear and unambiguous. The court stated

"[t]hat application of the provision in this case is not consistent with an asserted purpose behind the provision, even conceding the purpose asserted, does not establish a sufficient basis for our finding that the provision violates public policy." (115 Ill. App. 3d at 938, 451 N.E.2d at 27.)

The court further held that where the policy is clear and unambiguous, it is to be enforced as written, without going behind the language to speculate on the purposes underlying the provision. The policy exclusion was held to apply.

Similarly, in the instant case, the language of the automobile-business exclusions is clear and unambiguous and must be enforced as written. We find no language in the exclusions to indicate that the fact that the employee of the service station was known to the insured and, indeed had a special relationship with the insured, renders the exclusion inapplicable.

We can find only two reported cases in Illinois which involve the question of application of the automobile-business exclusion in the case of the personal use of an automobile also used in, or operated by one engaged in, the automobile business. From these cases it appears that had Hutcheson's use of the York vehicle been exclusively for personal business and completely unrelated to his automobile business at the time of the accident, even though he had initially received possession of the vehicle for purpose of repair, the automobile-business exclusion would not apply. *State Farm Mutual Auto Insurance Co. v. Mohan* (1967), 85 Ill. App. 2d 10, 20, 228 N.E.2d 283, 289.

In *Mohan,* an employee of an auto-body repair shop picked up a customer's vehicle to deliver it to the shop for repairs. Instead of so delivering the vehicle, however, the employee picked up his girl friend and went on a tour of local night spots. In the course of the evening, the employee was involved in a serious automobile accident in the customer's automobile. The appellate court found initially that the employee was a permissive user of the vehicle, for the owner had given him permission to drive the vehicle to the repair shop. Deviation from that purpose did not affect the driver's status as a user of the vehicle with permission. (85 Ill. App. 2d at 20, 228 N.E.2d at 289.) The court further found that the employee was, at the time of the accident, on a personal lark of his own and his use of the automobile was completely unrelated to the automobile business. The court distinguished a case where an employee of an automobile business had an accident while on a minor or incidental deviation from the business use of the vehicle. (*Walker v. State Farm Mutual Automobile Insurance Co.* (1963), 40 Ill. App. 2d 463, 190 N.E.2d 121.) In such a case, the court held, the exclusion would apply. In *Mohan,* it did not.

In *Walker,* the insured had given his son permission to use his insured automobile for any purpose and at any time. The insurance policy expressly excluded coverage for any automobile while used in the automobile business. The son owned and operated a service station. He borrowed the insured's car to exchange an auto part he had purchased at a store in a neighboring town. He invited a friend along, and the two stopped for lunch in the neighboring town. He then exchanged the auto part and on the return trip was involved in an accident.

The insurance company denied coverage, arguing that since there was no dispute about the fact that the son was engaged in the automobile business as defined in the policy and that at the time of the collision the automobile was being used in part for a purpose connected with the automobile business, the automobile-business exclusion applied. The appellate court found no ambiguity in the automobile-business exclusion and therefore no basis to invoke the principle of resolving ambiguities in favor of the insured. In the absence of ambiguity and illegality, the court gives effect to the policy as written. (40 Ill. App. 2d at 465, 190 N.E.2d at 122.) The court specifically found:

> "[i]t makes no difference that the car may have been used at the same time for other purposes as well as the business of the service station. The exclusion is not limited to the situation where the sole use of the car is in connection with the business.

It may be assumed that at any time a car is used for the purpose of obtaining and transporting parts for use in the business the driver may stop for a meal at some point or to make some other purchase of a personal nature. If these other activities were sufficient to bar the application of the exclusion, then that provision of the policy is virtually a nullity." (40 Ill. App. 2d at 467, 190 N.E.2d at 122-23.)

Thus, the court held that the automobile-business exclusion did operate to bar coverage where the car was used for a dual purpose, combining business with an incidental and minor personal purpose.

■ Appellants argue that this case is more akin to *Mohan* than to *Walker*. We disagree. In *Mohan*, the service station employee's use of the automobile was completely unrelated to the automobile business. The driver had not merely deviated slightly or incidentally from his use of the vehicle in the automobile business but had completely abandoned the business use in favor of a "personal lark." (*Mohan*, 85 Ill. App. 2d at 21, 228 N.E.2d at 289.) In *Walker*, as in this case, the primary use of the vehicle related to the automobile business, and the deviation therefrom was minor and incidental. The use of the automobile for the automobile business was not abandoned but was combined with a personal objective which was minor and incidental. In such a case, the automobile-business exclusion does apply.

Accordingly, we affirm the judgment of the circuit court of Saline County finding that neither the Allstate Insurance Company nor the General Casualty Company of Illinois policy of insurance provides coverage for the accident in question.

Affirmed.

HARRISON and H. LEWIS, JJ., concur.