*In re* MARRIAGE OF DONNA K. NIENHOUSE, Petitioner-Appellee, and ROBERT F. NIENHOUSE, Respondent-Appellant.

First District (4th Division)   Nos. 1—03—2279, 1—03—2357 cons.

No. 1—03—2357.

Opinion filed December 30, 2004.

David I. Grund, Marvin J. Leavitt, and Margarita T. Kulys, all of Grund & Leavitt, P.C., of Chicago, for appellant.

No brief filed for appellee.

JUSTICE THEIS delivered the opinion of the court:

In this consolidated appeal, respondent, Robert F. Nienhouse, appeals from a judgment for dissolution of his marriage to the petitioner, Donna K. Nienhouse. During the pendency of their marriage, two children, Catherine and Caroline, were born. Robert sought a declaration of nonpaternity with respect to Caroline. It was agreed by the parties, in part due to deoxyribonucleic acid (DNA) testing, that Robert was not the father of Caroline. Thereafter, the trial court denied Robert's petition for sibling visitation between Catherine and Caroline, and denied his motion to vacate the order of nonpaternity. The parties subsequently entered into an agreement regarding sibling visitation which was incorporated into the judgment for dissolution of marriage.

On appeal, Robert contends that (1) the trial court erred in denying his motion to vacate the nonpaternity order; (2) that the trial court erred in denying his petition for sibling visitation between Catherine and Caroline; and (3) the trial court abused its discretion in requiring Robert to pay the attorney fees for David Goldman, Caroline's child representative. For the following reasons, we affirm in part and dismiss in part appeal No. 1—03—2279, and dismiss appeal No. 1—03—2357.

BACKGROUND

The following facts are relevant to a disposition of this appeal. Donna and Robert were married on December 9, 1989, and had a daughter, Catherine, born December 10, 1990. In October 1995, Donna filed a petition for dissolution of marriage. Thereafter, Robert filed a counterpetition, seeking custody of Catherine and Donna's son Carlton, whom he had adopted. During the pendency of the dissolution proceedings, in March 1997, Donna gave birth to a daughter, Caroline. Two months later, Robert filed a petition for establishment of nonpaternity as to Caroline and attached the DNA test results to his petition which excluded him as her biological father.

On July 21, 1997, an order was entered "[t]hat by agreement of the parties and based upon the parentage testing performed, the court finds that Robert F. Nienhouse is not the biological father of the minor child Caroline Nienhouse, born March 19, 1997." Subsequently, in 1998, Donna initiated a parentage action against David B. Weinberger. Caroline was represented by a guardian *ad litem* (GAL) and her best interests were considered during those proceedings. Weinberger acknowledged paternity and entered into a parentage settlement

agreement with Donna which was incorporated into a judgment of parentage on February 25, 1999. As part of that judgment, Donna was awarded custody of Caroline.

Almost four years after the entry of the order regarding Robert's nonpaternity, Robert filed a motion seeking to vacate that order, arguing that (1) the trial court erred in failing to conduct a hearing on Caroline's best interest; (2) the order violated Caroline's right to due process; and (3) the order violated Illinois public policy regarding the best interest of the child. However, on August 15, 2001, Robert sought to voluntarily dismiss that motion without prejudice. The record reflects that the motion to voluntarily dismiss was never ruled upon by the trial court. Additionally, Robert had filed a complaint for declaratory relief in the chancery division, seeking a judgment that the nonpaternity order of July 21, 1997, was void. That action was consolidated into the pending dissolution proceedings, but was later voluntarily dismissed on September 30, 2002.

On September 13, 2002, Donna filed a motion to strike Robert's motion to vacate the nonpaternity order for failure to state a cause of action upon which relief could be granted. The motion was additionally joined by Caroline's child representative, who argued that it would not be in Caroline's best interest to vacate that order. On September 30, 2002, the trial court granted the motion to strike, dismissed Robert's motion with prejudice, and denied Robert's request to replead and file an amended motion to vacate.

Additionally, on July 22, 2002, Robert filed a third emergency petition for sibling visitation on behalf of his daughter Catherine pursuant to section 607 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/607 (West 2002)). Goldman then filed a motion to strike and dismiss the petition, arguing that section 607 had been declared unconstitutional by the supreme court in *Wickham v. Byrne*, 199 Ill. 2d 309, 769 N.E.2d 1 (2002). On August 7, 2002, the trial court denied the petition for visitation, holding that the statute upon which the petition was premised was no longer valid, relying on *Wickham*. Furthermore, the court held that Robert's motion to vacate the agreed order regarding his nonpaternity did not stay the enforcement of the nonpaternity order because it was a consent decree in which the issue of Caroline's paternity was never tried or adjudicated.

Subsequently, on May 16, 2003, the trial court entered a judgment for dissolution of marriage. Therein, Robert was awarded the sole care, custody, and control of Catherine. The judgment also incorporated a previously entered order between Robert and Donna in which they agreed to sibling visitation between Catherine and Caroline as follows:

"That the order entered October 7, 2002, *** providing sibling visitation between CATHERINE and CAROLINE on Sundays from 1:00 to 5:00 p.m. at Norma Alencastro's house, is incorporated in this Judgment and that each and every provision thereof is binding upon each of the parties hereto."

The record further reflects that after the judgment for dissolution of marriage was entered, Donna moved to Kentucky with Caroline. Robert sought to enforce the agreed visitation order in the circuit court of Kentucky, and the court denied enforcement of the order, finding that Caroline was not a party to the action, was not a child of the marriage, and was a resident of Kentucky and that Donna objected to the visitation. Robert's appeal to the Kentucky court of appeals is now pending.

The judgment for dissolution of marriage also incorporated an order awarding fees and costs to Goldman for his services as child representative pursuant to section 506 of the Marriage Act (750 ILCS 5/506 (West 2002)). On May 27, 2003, Robert filed a notice of appeal (case No. 1—03—2357). Thereafter, Goldman filed a postjudgment motion for clarification and reconsideration with respect to the issue of his fee award. That motion was denied on July 21, 2003. On July 30, 2003, Robert filed a new notice of appeal (case No. 1—03—2279), and the two appeals were consolidated. Goldman then filed a notice of cross-appeal.

ANALYSIS

Initially, we note that Donna has not filed an appellee's brief. However, we will decide the merits of this appeal based upon the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976). Robert contends that the trial court erred in denying his petition for sibling visitation between Catherine and Caroline. Robert previously raised this issue before this court on an interlocutory appeal. We dismissed the appeal as moot. The issue remains moot for the following reasons.

■ The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 522-23, 759 N.E.2d 509, 514 (2001). "An appeal is considered moot where it presents no actual controversy or where the issues have ceased to exist." *In re Andrea F.*, 208 Ill. 2d 148, 156, 802 N.E.2d 782, 787 (2003). "The test for mootness is whether the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual

relief to the complaining party." *In re Andrea F.*, 208 Ill. 2d at 156, 802 N.E.2d at 787.

Here, after the denial of Robert's petition for sibling visitation, the parties incorporated their own agreement with respect to sibling visitation into the judgment for dissolution of marriage. Therein, the parties themselves conferred the right of sibling visitation on behalf of their children and set out the terms and conditions of the contact between the children. Thus, the issue of whether the children have a right to sibling visitation was decided by agreement of the parties and renders the right to sibling visitation moot because Robert was subsequently granted the relief he sought. While Robert argues on appeal that Donna has now objected to visitation, and therefore, an actual controversy remains, that is a controversy regarding the enforcement of the visitation agreement. See generally *In re M.M.D.*, 213 Ill. 2d 105, 116 (2004) (parties' visitation agreement was enforceable despite *Wickham* as the "constitutional protections afforded parenthood *** obligate the courts to uphold voluntary visitation agreements made by fit parents, not declare them invalid"). The enforceability of that order is not before this court. Rather, that issue is now pending before the Kentucky court of appeals. Accordingly, we do not address the merits of Robert's argument.

Robert additionally argues that even if the issue is moot, we should review it under the public interest exception to the mootness doctrine. We have already declined to do so in Robert's previous interlocutory appeal. Our decision remains the same. Our supreme court has recognized an exception to the mootness doctrine when the question involved is of a public nature, the circumstances are likely to recur, and an authoritative determination for the future guidance of public officers is desirable. *In re Andrea F.*, 208 Ill. 2d at 156, 802 N.E.2d at 787. The exception is construed narrowly, and a clear showing of each criterion is required to bring a case within its terms. *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365, 710 N.E.2d 1226, 1227 (1999).

Initially, we are mindful of the principles espoused in *First Capitol Mortgage Corp.* with respect to the absence of an appellee's brief here. Where the record is complex and the issues relating to sibling visitation are not easily determinable without the benefit of the mother's brief, we will not decide the merits of this issue. *First Capitol Mortgage Corp.*, 63 Ill. 2d at 133, 345 N.E.2d at 495. Furthermore, the necessary criteria for invoking the exception have not been met. This case does not necessarily involve an event of short duration, which is capable of repetition, causing this issue to evade review. *In re Estate of Hall*, 302 Ill. App. 3d 829, 837, 707 N.E.2d 201, 207 (1998). The issue of sibling visitation may arise in a myriad of circumstances in the future and

can be raised in the proper context based upon the specific set of facts before the court. Accordingly, we decline to invoke the public interest exception to the mootness doctrine.

■ We next address Robert's contention that the trial court erred in denying his motion to vacate the order of nonpaternity. The order regarding nonpaternity was not imposed by the court against Robert's wishes. Rather, it was entered pursuant to his own petition wherein he attached DNA evidence proving that he was not the biological father of Caroline. Therein, he voluntarily requested that the court declare that he was not the father of Caroline and declare that he had no parental rights or responsibilities to her. The order also reflects that the parties agreed to the order and that Robert's counsel signed the order. Additionally, as the trial court stated during its review of Robert's petition for sibling visitation, there was no trial or adjudication of Robert's rights. Thus, the order was a consent decree, and must be evaluated according to principles governing consent decrees. *In re M.M.D.*, 213 Ill. 2d at 114.

As a general rule, "a consent decree is not appealable because it does not constitute a resolution of the parties' rights but is a mere recordation of their private agreement." *Burchett v. Goncher*, 235 Ill. App. 3d 1091, 1094, 603 N.E.2d 1, 3 (1991). Once a consent decree has been entered, it is generally considered to be binding on the parties and cannot be set aside without the consent of each party unless it can be shown that it resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the parties' bargaining positions, or newly discovered evidence, or where the contract is void as contrary to public policy. *In re M.M.D.,* 213 Ill. 2d at 114; *Burchett,* 235 Ill. App. 3d at 1094-95, 603 N.E.2d at 3-4. Robert does not assert any of these grounds on appeal and therefore cannot now attack the consent decree.

Rather, Robert now argues that the nonpaternity order was contested. However, that order has been characterized as one of agreement throughout these court proceedings by the trial court and by Robert. In his own motion to vacate the nonpaternity order, he refers to it as "an order in which, *inter alia*, it was agreed that Robert was not the biological father of Caroline." At the hearing prior to the entry of the judgment for dissolution of marriage on May 15, 2003, Robert's counsel repeatedly referred to the order as an agreed order, stating, "[t]he agreed order was entered concerning Caroline's paternity. The agreed order that we sought to vacate also involved Caroline's paternity." Accordingly, we reject Robert's attempt to change that characterization on appeal.

Nevertheless, even were we to construe the nonpaternity order as

an adjudication of Robert's rights, Robert's arguments lack merit. He maintains that he was entitled to vacate the order because it was a void order in which (1) Caroline was not represented by a GAL or other legal representative; (2) the court failed to conduct a best interest hearing; and (3) failure to appoint a representative and make a best interest determination deprived Caroline of her federal and state constitutional rights to due process.

Initially, Robert fails to explain why he has standing to assert Caroline's rights where he is not her father or legal guardian. Beyond that, there is no express statutory requirement that a trial court appoint a GAL or child representative in every parentage proceeding. *In re Marriage of Koenig*, 211 Ill. App. 3d 1045, 1051, 570 N.E.2d 861, 864-65 (1991); *Klawitter v. Crawford*, 185 Ill. App. 3d 778, 788, 541 N.E.2d 1159, 1166 (1989). Indeed, the Illinois Parentage Act of 1984 (the Parentage Act) provides "[i]f any *party* is a minor, he or she *may* be represented by his or her general guardian or a guardian ad litem appointed by the court." (Emphasis added.) 750 ILCS 45/7(c) (West 2002). Here, Caroline was not a party to the proceeding and the appointment was not mandatory.

Robert cites *Majidi v. Palmer*, 175 Ill. App. 3d 679, 530 N.E.2d 66 (1988), and *McDonald v. McGowan*, 163 Ill. App. 3d 697, 516 N.E.2d 934 (1987), for the proposition that when a court has notice that a minor is present without proper representation, it is the duty of the court to appoint a GAL to protect the interests of the minor. Those cases are contrary to the statute and distinguishable from the present case. They involved contested paternity disputes wherein the putative father brought an action to establish paternity and visitation rights. The mother filed a motion to dismiss the petition based on the father's failure to file his action within the statute of limitations. Due to the mother's motion to dismiss, there was a clear indication of a potential conflict between the child's interests in visitation and child support and the mother's interests. Under those circumstances, the court held that the circuit court had an obligation to appoint a GAL. *Majidi*, 175 Ill. App. 3d at 685, 530 N.E.2d at 70; *McDonald*, 163 Ill. App. 3d at 699, 516 N.E.2d at 935. Here, the trial court had no notice that the minor's interests were not properly represented. Furthermore, we follow the holding in *Klawitter* wherein the court declined to follow *Majidi* and *McDonald*, finding that there is no statutorily mandated requirement to appoint a GAL in this type of proceeding. *Klawitter*, 185 Ill. App. 3d at 788, 541 N.E.2d at 1166.

Nor is there any express requirement under the Act that a court consider the best interest of the child before a determination of paternity is made. *In re Parentage of John M.*, 212 Ill. 2d 253, 264

(2004). Rather, as our supreme court has recently reiterated, the first step in the proceeding is to establish or disestablish parentage. Once parentage has been established, then the court is charged with the responsibility of deciding other issues which surround paternity, including custody and visitation, where the best interest of the child is then of paramount concern. *In re Parentage of John M.*, 212 Ill. 2d at 264-65. Specifically, section 14 of the Parentage Act provides that any decisions regarding custody and visitation "shall [be] determine[d] in accordance with the relevant factors set forth in the Illinois Marriage and Dissolution of Marriage Act [(750 ILCS 5/101 *et seq.* (West 2002))] and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child." 750 ILCS 45/14 (West 2002). Thus, prior to a determination of parentage, the Parentage Act makes no provision to require a best interest hearing. However, once the parental rights of the biological father are implicated, then the best interests of the child must be considered in deciding whether and under what terms that paternity should be exercised.

In this case, Robert filed a petition seeking to *disestablish* paternity, a petition which was uncontested by Donna, Caroline's parent, and supported by DNA test results. Therefore, no issues regarding the custody and visitation of the biological father were implicated. Indeed, when a judgment of parentage was subsequently entered incorporating a settlement agreement with respect to the custody and visitation of the biological father, Caroline was appropriately represented by a GAL and her best interest was considered at that proceeding. Moreover, Robert seeks to vacate the nonpaternity order, presumably for the appointment of a GAL to represent Caroline's best interest. However, we note that Caroline's child representative joined in the motion to strike Robert's motion to vacate the order of nonpaternity, finding that it would not be in Caroline's best interest to vacate that order.

With respect to Robert's constitutional arguments, a party has standing to bring a constitutional challenge only if the party is able to show himself to be within the class aggrieved by the alleged unconstitutionality. *People v. Morgan*, 203 Ill. 2d 470, 482, 786 N.E.2d 994, 1002 (2003). Robert's right to due process is not at issue here. Rather, he attempts to argue on behalf of Caroline's best interest, but he cannot act in such a capacity where he is not her father or legal guardian. Therefore, Robert has no standing to raise this constitutional issue on appeal. Moreover, our supreme court has recently determined that the fact that the Parentage Act makes no provision for a best interest hearing before allowing a paternity action to proceed does not render the statutory scheme facially unconstitutional. *In re Parentage of John*

*M.*, 212 Ill. 2d at 270. Thus, for all of the foregoing reasons, the trial court did not err in granting Donna's motion to strike and in dismissing Robert's motion to vacate the order of nonpaternity.

We next address Robert's contention that the trial court erred in assessing Goldman's attorney fees against him pursuant to the judgment for dissolution of marriage. Specifically, he argues that Goldman was appointed solely for the purpose of representing Caroline during the pendency of the domestic violence proceedings, that such proceedings were governed by the Illinois Domestic Violence Act of 1986 (the Domestic Violence Act) (750 ILCS 60/101 *et seq.* (West 2002)), that they were not an ancillary part of the claim for dissolution of marriage, and that there is no provision in the Domestic Violence Act for the payment of attorney fees and costs.

■ Initially, we note that Goldman has not filed an appellee's brief. However, we will decide the merits of this issue under the principles set forth in *First Capitol Mortgage Corp.*, 63 Ill. 2d at 133, 345 N.E.2d at 495. The record does not reflect Robert's contentions regarding the nature of Goldman's appointment. During the pendency of the dissolution proceedings, Robert repeatedly moved the court on several occasions to appoint a GAL or other representative to represent Caroline's interests in the proceedings relating to her custody and visitation with Robert. Subsequently, Robert filed a petition for an order of protection on behalf of himself as well as Catherine and Caroline and again requested that a representative be appointed for Caroline. On May 2, 2002, the trial court granted Robert's request for appointment of a child representative to represent the best interest of Caroline. The order signed by Robert's counsel is made pursuant to section 506 of the Marriage Act (750 ILCS 5/506 (West 2002)). The order states as follows:

> "The child's representative *** shall be entitled to reasonable temporary and permanent fees and cost pursuant to statute. Without prejudice to the rights of either party for an accounting and an apportionment among the parties, the parties shall pay *** as and for temporary prospective fees, within 7 days, the following amounts."

Robert agreed to pay the relevant retainer fee of $2,500 as provided for under the Marriage Act. The duration of Goldman's appointment was left undetermined at that time. After a full hearing, which ultimately involved the care and possession of Caroline, the trial court denied Robert's petition for a plenary order of protection. The trial court further denied Robert's oral motion to discharge Goldman as the child representative and held that "Goldman has been appointed to represent [Caroline] for the entire case." The record also reflects

that Goldman filed several pleadings relating to the issues of Robert's parentage and sibling visitation and participated in all aspects of the case. Subsequently, Goldman filed a petition for attorney fees and costs pursuant to section 506(b) of the Marriage Act (750 ILCS 5/506(b) (West 2002)). The judgment for dissolution incorporated an order awarding fees and costs to Goldman. Robert was responsible for the payment of $18,000, and Donna was responsible for the payment of $3,000.

The instant fee award was warranted under the express terms of section 506 of the Marriage Act. 750 ILCS 5/506 (West 2002). That section provides for the appointment and payment of an attorney to represent the interests of a minor child with respect to issues involving his custody, visitation and parentage. 750 ILCS 5/506 (West 2002). The section further provides that such order by the court shall require payment by either or both parents, by any other party or source, or from the marital estate or the child's separate estate. 750 ILCS 5/506 (West 2002).

This language does not limit the application of section 506 to proceedings brought under the Marriage Act. Indeed, section 508 of the Marriage Act specifically authorizes the payment of these types of attorney fees in litigation "reasonably connected with[ ] a proceeding under this Act." 750 ILCS 5/508(a)(6) (West 2002). The record amply supports that the issues involved in the domestic violence proceeding were reasonably connected with the dissolution action for purposes of authorizing the payment of these fees.

Robert cites *In re Marriage of Blitstein*, 212 Ill. App. 3d 124, 129-30, 596 N.E.2d 1357, 1360 (1991), in support of his contention that the award of fees does not fall within the purview of section 508(a)(6). However, *Blitstein* did not address the issue of attorney fees under the Marriage Act. Rather, it merely held that an order of protection is not inherently related to a dissolution proceeding because it may be brought independently or in conjunction with other civil or criminal proceedings. Therefore, it is a separate claim which could be treated as an injunction for purposes of an immediate appeal. *Blitstein*, 212 Ill. App. 3d at 130, 596 N.E.2d at 1360. Contrary to Robert's contention, Goldman's representation was related to the dissolution proceedings for the purposes of awarding fees, as his representation included issues of visitation and parentage that were raised by Robert. Accordingly, for all of the foregoing reasons, the trial court did not err in assessing Goldman's attorney fees pursuant to the Marriage Act.

■ Lastly, where the notice of appeal in case No. 1—03—2357 was filed prior to the filing of the last timely filed postjudgment motion directed at the judgment, that appeal is dismissed as premature pursu-

ant to Supreme Court Rule 303(a)(2). 155 Ill. 2d R. 303(a)(2). Additionally, we dismiss Goldman's cross-appeal in case No. 1—03—2279 for want of prosecution.

No. 1—03—2357, Dismissed.

No. 1—03—2279, Affirmed in part, dismissed in part, and cross-appeal dismissed.

REID, P.J., and QUINN, J., concur.