*In re* MARRIAGE OF SARA DAVIS, Petitioner-Appellee, and ROBERT DAVIS, Respondent-Appellant.

Fourth District   No. 4—97—0036

Opinion filed October 21, 1997.

Joseph W. Vigneri, of Joseph W. Vigneri, Ltd., of Decatur, for appellant.

David J. Ryan and Nancy S. Johnson, both of Dukes, Martin, Ryan, Meyer & Krapf, Ltd., of Danville, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Respondent Robert Davis appeals from a judgment of the circuit court of Vermilion County pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508 (West 1996)) requiring that he reimburse petitioner Sara Davis $7,423.66 in attorney fees. The fees at issue were paid by Sara to the attorney who successfully represented her in a lawsuit brought against both Robert and Sara by the Edgar County Bank and Trust Company. The subject of that lawsuit was an unpaid debt allocated to Robert at the time of the parties' divorce. For the reasons stated below, we affirm.

## FACTS

Robert Davis and Sara Davis were divorced in 1988 after 27 years of marriage. Sara's petition for dissolution was initially filed in Edgar County, where both parties reside, but the matter was transferred to Vermilion County by agreement of the parties. A judgment of dissolution of marriage was entered by the circuit court of Vermilion County on December 22, 1988, reserving all other issues. On August

16, 1990, a supplemental order was entered dealing with the division of property and the payment of rehabilitative maintenance to Sara. Under the supplemental order, a debt of $67,800 dating from August 1987 to the Edgar County Bank and Trust Company, "characterized as a business loan," was "allocated" to Robert.

On March 19, 1991, Sara filed a petition for rule to show cause in connection with Robert's nonpayment of the bank loan. The record of the April 23, 1991, proceedings on that petition was not provided. The rule to show cause was not issued. (Sara's attorney indicated at a subsequent hearing on October 19, 1993, that the petition was denied because Sara had sustained no damage at that time as a result of Robert's nonpayment of the loan.)

On September 13, 1991, the bank filed suit against both Sara and Robert for nonpayment of the loan. Robert filed for bankruptcy under chapter 13 of the United States Bankruptcy Code on October 18, 1991, and was later dismissed from the bank's lawsuit, which proceeded against Sara. Sara filed a second petition for rule to show cause in connection with this debt on November 12, 1991. Apparently no hearing was held on that petition.

The circuit court of Edgar County found Sara not liable on the business loan and issued a memorandum decision to that effect on August 11, 1992. On September 1, 1992, Robert moved to voluntarily dismiss his bankruptcy case (which he had converted to a chapter 7 bankruptcy proceeding in the interim). He then secured a loan from another bank and paid the business loan in full on October 16, 1992.

Sara, who did not make any payments on the business loan, did, however, incur legal defense fees and costs in connection with the successful defense of the bank lawsuit. On July 30, 1993, Sara filed a third petition for rule to show cause on this matter. Count I sought to have Robert held in contempt for his failure to pay the business loan in a timely manner and ordered to pay Sara's attorney fees for the bank lawsuit. Count II dealt with the ongoing dispute between the parties regarding maintenance payments and is not relevant to this appeal.

On August 20, 1993, Robert entered a special and limited appearance for the purpose of objecting to the jurisdiction of the trial court in this matter and a hearing was held on October 23, 1993. The trial court ruled on November 15, 1993, that it did have subject-matter jurisdiction. The written order was entered on November 28, 1995, *nunc pro tunc* March 14, 1995. This order also denied the petition to find Robert in contempt inasmuch as he had paid the debt to the bank in full and a finding of civil contempt was not needed to coerce his compliance with an order of the court.

Sara's attorney meanwhile had obtained a default judgment against her in the amount of $7,723.69 in the circuit court of Coles County on December 15, 1993. Between that time and the September 20, 1996, hearing on the parties' relative financial abilities to pay the attorney fees, those fees were paid from the proceeds of the sale of Sara's mother's home. There is a factual dispute as to how those funds should be characterized. Robert says that the money used to pay Sara's attorney fees was essentially a gift—it was never repaid, there was no note, and no terms of repayment were established. Sara says that the amount used to pay her attorney was taken from her share of her mother's estate. (During the pendency of this proceeding, Sara's mother sold her home, moved into a nursing home, and later died.)

The trial court entered a final order on December 20, 1996, containing four findings: (1) the trial court did have subject-matter jurisdiction under section 508 of the Act (750 ILCS 5/508 (West 1996)); (2) fundamental fairness requires Robert to reimburse Sara in the amount of $7,423.66 for the attorney fees at issue; (3) Sara lacks the financial resources to pay this debt and had to use a portion of the proceeds of her mother's estate for this purpose, thereby diminishing assets needed for her living expenses and future retirement; and (4) Robert, although he does not have substantial liquid assets, does own property and is able to reimburse Sara if given sufficient time to do so. The order requires Robert to repay Sara $7,423.66 in 60 monthly installments of $123.72 each.

Robert appeals, arguing that (1) the trial court lacked subject-matter jurisdiction under section 508 of the Act, (2) section 508 of the Act does not apply to attorney fees incurred in litigation outside divorce court, and (3) the award of attorney fees to Sara was an abuse of discretion and contrary to law.

## I. SUBJECT-MATTER JURISDICTION OF THE TRIAL COURT

The trial court, in its ruling on November 15, 1993, found that it did have subject-matter jurisdiction for the purpose of enforcing the terms of the original judgment. The court thus explicitly rejected Robert's argument that Sara's petition was an impermissible attempt to modify the terms of the property disposition by imposing new terms and conditions. Robert argues that the trial court was in error because count I of Sara's petition, seeking a finding of contempt and the award of attorney fees, did seek to modify the property terms of the supplemental order of August 16, 1990.

■ Robert is correct that under section 510(b) of the Act:

"The provisions as to property disposition may not be revoked

or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State." 750 ILCS 5/510(b) (West 1996). The provisions for disposition of property in a dissolution judgment are thus a vested right and the trial court lacks jurisdiction to modify such provisions once judgment has become final. *Johnson v. Johnson*, 267 Ill. App. 3d 253, 257, 642 N.E.2d 190, 193 (1994). The test used to determine if the relief sought is a modification of the judgment is whether the petitioner seeks to "engraft" new obligations onto the obligations of the party under the order. *Waggoner v. Waggoner*, 78 Ill. 2d 50, 53-54, 398 N.E.2d 5, 8 (1979).

■ Before we can determine whether Sara's petition sought to engraft new obligations onto the original order, we must first determine Robert's obligations under the original order that said the debt was "allocated" to Robert and nothing more. Disposition of property is governed by section 503 of the Act (750 ILCS 5/503 (West 1996)) and, although the Act does not specifically address the allocation of debts, "[i]t is well settled that marital debts as well as marital assets must be distributed equitably." *In re Marriage of Lees*, 224 Ill. App. 3d 691, 693, 587 N.E.2d 17, 19 (1992). If allocation of debts under the Act has any meaning at all, it must mean that the party allocated the debt is expected to pay it and to do so in a manner that does not expose the other party to liability on the debt. Sara had cosigned for the loan with Robert during the marriage and his failure to comply with the order was the cause of her being named in the bank's lawsuit and having to incur legal fees. Robert's claim that the original order contained no directive that he even pay the debt at all is disingenuous.

This situation is readily distinguishable from the cases relied upon by Robert. In *Waggoner*, the former wife sought to compel her ex-husband to remove a judgment lien and a second mortgage, both of which predated the award, on the home awarded to her under the property disposition. The supreme court held that this was an attempt to engraft additional obligations onto the decree and that the trial court, therefore, lacked subject-matter jurisdiction to entertain the ex-wife's motion. In *Waggoner*, the ex-wife took property subject to preexisting debts and it would have been an impermissible modification of the decree to later assign those debts to the ex-husband.

In *In re Marriage of Milliken*, 199 Ill. App. 3d 813, 557 N.E.2d 591 (1990), the former wife sought reimbursement from her ex-husband for her repayment of a loan allocated to him in the dissolution decree. The loan from the ex-wife's brother to the ex-husband

was not a "marital debt for which she was legally or jointly liable." *Milliken*, 199 Ill. App. 3d at 819, 557 N.E.2d at 595. Because the ex-wife's payment of the ex-husband's debt to a third party was purely gratuitous, requiring him to reimburse her would have had the effect of engrafting a new obligation onto the final decree. As this would constitute modification of a final property disposition, the trial court again lacked subject-matter jurisdiction to hear her petition.

■ In the present case, Robert was allocated a debt and Sara, in three separate petitions and by incurring the expense of defending a lawsuit, sought only to protect herself from being held liable for Robert's debt, not to transfer a debt from herself to Robert after the entry of a final order. Neither was she seeking reimbursement for a debt she had gratuitously paid on his behalf. Instead, she sought to have him held in contempt for failure to pay a debt assigned to him and to be reimbursed for legal fees she incurred defending herself from a lawsuit on the same debt. We find that Sara was not seeking modification of the property provisions of the supplemental order and, therefore, the trial court did have subject-matter jurisdiction over count I of her petition.

## II. APPLICABILITY OF SECTION 508 OF THE ACT

Robert argues that section 508 of the Act is not applicable to collateral proceedings and that, because Sara's legal fees were incurred defending a separate civil lawsuit in a different court, they cannot be the subject of a section 508 award. Sara responds that the sole reason for her need to obtain the services of an attorney was Robert's failure to comply with the terms of the supplemental order and the terms of the loan agreement with the bank. We must therefore address two questions. First, we must consider whether a trial court may award attorney fees under section 508 of the Act for fees incurred in any type of collateral proceeding; second, if so, whether Sara's defense of the bank lawsuit is the type of proceeding for which fees may be awarded.

■ The question of the availability of section 508 fees in collateral proceedings was addressed most recently by the second district in *In re Marriage of Kent*, 267 Ill. App. 3d 142, 640 N.E.2d 973 (1994). In that case, the former wife incurred legal fees in connection with her former husband's bankruptcy proceeding in which he sought to discharge his obligations to her under their settlement agreement. The court stated:

> "The plain meaning of the statute allows the recovery of fees incurred in any proceeding that has as its goal the enforcement of an order or judgment entered in a dissolution proceeding." *Kent*, 267 Ill. App. 3d at 144, 640 N.E.2d at 974.

Finding that the trial court did have jurisdiction under section 508 of the Act to award attorney fees, the court remanded the case to determine whether the requirements of section 508(b) of the Act were met. For reasons discussed below, Sara's claim for attorney fees must be evaluated under section 508(a) of the Act, but this does not affect the applicability of the reasoning in *Kent*. *Kent* clearly supports the proposition that it is the purpose, not the location, of the proceeding that determines whether section 508 of the Act applies.

In an earlier case, the same court found that a trial court had erred by failing to consider whether a separate proceeding was brought to enforce the dissolution order. In *In re Marriage of Sanda*, 245 Ill. App. 3d 314, 612 N.E.2d 1346 (1993), the former wife attempted to enforce a judgment by two alternative means, a petition for rule to show cause and a separate civil suit against the former husband alleging fraud in connection with the assets that were the subject of the dissolution order. The relief sought in both proceedings was identical. The court found that the trial court must determine if the separate proceeding was brought to enforce the order and, if so, determine reasonable attorney fees.

These cases from the second district clearly contemplate the award of section 508 attorney fees in connection with certain collateral proceedings. Robert relies on three cases from the first and fifth districts for the opposite conclusion. These cases are either distinguishable on their facts or, in any event, do not support Robert's argument that section 508 of the Act may not apply to any collateral proceeding.

In *In re Marriage of Burton*, 203 Ill. App. 3d 890, 561 N.E.2d 180 (1990), suit was brought by the former wife's attorney against his client for services provided to her in the ex-husband's postdivorce bankruptcy proceeding. The fifth district court stated:

> "*Ordinarily*, a court hearing dissolution proceedings does not have subject[-]matter jurisdiction to award attorney fees rendered in any case other than the one proceeding before it." (Emphasis added.) *Burton*, 203 Ill. App. 3d at 894, 561 N.E.2d at 183.

*Burton* is thus in conflict with *Kent*, which also involved a postdivorce bankruptcy proceeding, but even *Burton* does not suggest this rule is absolute.

Robert also relies on a first district case, *In re Marriage of Pitulla*, 141 Ill. App. 3d 956, 491 N.E.2d 90 (1986). *Pitulla* involved a dispute between an attorney and his client over the reasonableness of the fees charged for representation in a divorce proceeding. A single footnote in *Pitulla* is relevant:

> "[S]ection 508 was never intended to be used as a vehicle to obtain

a judgment for attorney fees for all kinds of legal services performed on behalf of a client. Rather, a judgment for attorney fees under the Act may only be for legal services 'made in connection with' the specific provisions of section 508." *Pitulla*, 141 Ill. App. 3d at 959 n.1, 491 N.E.2d at 92 n.1.

The attorney in this case had apportioned his $10,000 fee equally between "tax advice" and "matrimonial representation" and it was not clear whether the tax advice rendered related to any proceeding under the Act. Therefore, the matter was remanded to determine whether the tax advice was made in connection with one of the five enumerated subparagraphs of section 508(a) of the Act. *Pitulla* thus stands for the proposition that an attorney is not entitled to utilize section 508 of the Act to obtain a judgment against his client unless the fees were earned in connection with one of the proceedings enumerated in section 508(a) of the Act and does not speak to the situation before us.

*In re Marriage of Campbell*, 261 Ill. App. 3d 483, 633 N.E.2d 797 (1993), another case from the first district is similarly inapposite. This case also involved an attorney seeking to recover unpaid fees from his own client, an ex-husband he had represented in a divorce. Citing the language in *Burton* that "ordinarily" fees cannot be awarded for representation in a collateral matter, the court held the trial court

"had no jurisdiction in this dissolution case to award *** fees for work performed in [client's] criminal case, which was proceeding in a different court totally independent of the dissolution case." *Campbell*, 261 Ill. App. 3d at 491, 633 N.E.2d at 803.

■ After reviewing these cases, we find that *Kent* is factually similar to the present case and is most persuasive. The collateral proceeding in this case was not a bankruptcy but a lawsuit by a creditor against both Robert and Sara. Robert's filing for bankruptcy resulted in his dismissal from the suit, leaving Sara alone exposed to liability on the loan that had been allocated to him. Like the former wife in *Kent*, Sara did not initiate this proceeding in another court, she merely defended her interests under the terms of the supplemental order. *Pitulla* and *Campbell* are factually distinguishable in that they involved attorneys seeking fees from their own clients for types of representation, criminal defense and tax advice, that are clearly not among the enumerated proceedings covered by section 508 of the Act. *Burton* notwithstanding, we agree with the second district that an award of attorney fees under section 508 of the Act may be made for expenses incurred in connection with a proceeding to enforce the provisions of a dissolution order, even if that proceeding occurs in a different court.

■ Having found that Sara's petition did not seek to modify the original order and that attorney fees under section 508 of the Act may be available for some proceedings outside the divorce court, we must determine whether Sara incurred these attorney fees in an effort to *enforce* the property provisions of the supplemental order, thus coming within the scope of one of the enumerated proceedings under section 508 of the Act.

The *Milliken* court distinguished between modification, found on its facts, and enforcement, where a former spouse seeks reimbursement for payment of a debt for which her legal liability has been established. *Milliken*, 199 Ill. App. 3d at 819, 557 N.E.2d at 595-96. Under this reasoning in *Milliken*, and entirely consistent with *Waggoner*, it would have constituted enforcement of the property disposition if Sara had allowed the bank to obtain a default judgment against her and to place a judgment lien on her home and then sought to compel Robert to pay the loan. It elevates form over substance to suggest that defending the same lawsuit and thereby incurring legal expenses is not also for the purpose of enforcing the order. Enforcement clearly means coercing the other party into compliance. Enforcement may also mean giving effect to the terms of the order in collateral litigation. Sara sought to enforce the allocation of the debt to Robert, to give effect to the terms of the supplemental order, when she successfully defended the bank's lawsuit against her.

Robert characterizes Sara's legal fees as "incidental expenses she claims to have incurred postjudgment in connection with debt assigned to Robert" and concludes that it "may be unfortunate Sara was sued in the meanwhile." If Sara's claim is based on enforcement of the original order, and we find that it is, then her attorney fees are not merely "incidental expenses," they are specifically allowed by statute to be awarded under certain circumstances.

## III. APPLICATION OF SECTION 508 OF THE ACT BY THE TRIAL COURT

■ There are two separate provisions under section 508 of the Act (750 ILCS 5/508(a)(2) (West 1996)) that apply to enforcement. Under section 508(a) of the Act, the award of attorney fees is discretionary with the trial court and is made after considering the relative financial resources of the parties. Under section 508(b) of the Act, however, the award of attorney fees is mandatory upon a finding that the failure to comply with the order was without cause or justification. A finding of contempt is sufficient to support a mandatory award of attorney fees but is not necessary. See *In re Marriage of Young*,

200 Ill. App. 3d 226, 230, 559 N.E.2d 178, 180-81 (1990). In this case, the question of contempt was made moot by Robert's payment of the debt after Sara prevailed in the bank lawsuit. There was no finding by the court that Robert's earlier failure to pay the bank debt was without cause or justification. The court did engage in a balancing of the parties' relative financial conditions as required by section 508(a) of the Act. It is clear that the trial court was applying section 508(a) of the Act, even though the final order does not specifically mention that provision. We find that section 508(a) of the Act was the proper provision under which Sara's petition for attorney fees should have been considered.

■ Whether the attorney fees of one spouse should be paid by the other spouse is a decision that lies within the sound discretion of the trial court and will not be disturbed on review absent an abuse of that discretion. *In re Marriage of Blazis*, 261 Ill. App. 3d 855, 870, 634 N.E.2d 1295, 1305 (1994). In general, each party has the primary obligation to pay his or her own attorney fees. *In re Marriage of Mantei*, 222 Ill. App. 3d 933, 941, 583 N.E.2d 1192, 1197 (1991). Robert cites *In re Marriage of Hacker*, 239 Ill. App. 3d 658, 668, 606 N.E.2d 648, 655 (1992), as placing the burden on Sara to show her inability to pay and his ability to pay the fees in question. He argues the fact that she has already paid the fees and seeks reimbursement is evidence of her ability to pay.

This court most recently addressed the issue of the award of attorney fees under section 508 of the Act in *In re the Marriage of Minear*, 287 Ill. App. 3d 1073, 679 N.E.2d 856 (1997), which, after citing *Mantei* and *Hacker* for the general rules above, explained:

"Yet financial inability to pay does not demand a showing of destitution, and the fee-seeking spouse is not required to divest himself of capital assets before requesting fees. [Citation.] It is sufficient to show payment would exhaust his estate or strip him of his means of support or undermine his economic stability."

*Minear*, 287 Ill. App. 3d at 1085, 679 N.E.2d at 865.

This is consistent with *In re Marriage of Head*, 273 Ill. App. 3d 404, 411-12, 652 N.E.2d 1246, 1252 (1995), cited by Sara, which requires the spouse with the "superior ability to acquire income and superior capital assets" to pay the other spouse's attorney fees "if a depletion of principle [*sic*] would result from requiring the latter to pay the fees."

■ The trial court heard and considered detailed evidence regarding the relative financial conditions of Robert and Sara, including his gross monthly income of $11,625 and her gross monthly income of $1,903 (including the $450-per-month maintenance payment). The or-

der of the trial court clearly applied the principle of *Minear* and *Head* that one spouse should not be required to invade capital to pay fees the other spouse could pay from current income. Based upon testimony that the trial court found credible, Sara had been required to pay the fees from "monies obtained from her mother's estate, thereby diminishing assets which she needs for her retirement and future living expenses." The trial court also acknowledged and gave proper weight to Robert's financial condition, which he describes as "insolvent," when it found that although Robert "does not have substantial liquid assets, he does have a house, office building and farm, and can reimburse [Sara] for the attorney fees from his current income, if given a substantial length of time to do so."

The order that Robert reimburse Sara by making 60 monthly installment payments of $123.72 thus addresses the concern raised by the dissenting judge in *Minear* (287 Ill. App. 3d at 1085-88, 679 N.E.2d at 866-67 (Cook, J., dissenting)). In that case, either party would have been required to invade capital assets to pay the fees; therefore, the dissent stated, there was no justification for shifting the fees from one to the other. In this case, however, Robert's payment in monthly installments of approximately 1% of his gross income over five years will enable Sara to rebuild the capital depleted by the judgment against her for these fees. We have previously endorsed the installment approach to the payment of attorney fees by a party who lacked the present ability to pay but had sufficient income to do so. *In re Marriage of McCoy*, 272 Ill. App. 3d 125, 131-32, 650 N.E.2d 3, 7 (1995).

Robert takes exception to the language of the order that "fundamental fairness" requires that he reimburse Sara for these fees, stating in his brief that "fundamental fairness is not a relevant concept under Section 508." He is, of course, correct that the trial court is obliged under section 508(a) of the Act to engage in a balancing of the parties' relative abilities to pay the fees, not to act as a court of equity. But neither is fairness totally irrelevant—it is the essence of the exercise of discretion to reach a fair determination. The trial court did engage in the proper analysis and did properly exercise its discretion in awarding $7,423.66 in attorney fees to Sara, to be paid in monthly installments over five years.

## IV. AVAILABILITY OF AWARD OF ATTORNEY FEES FOR THIS PROCEEDING

In her brief, Sara requests that this case be remanded so that she may seek payment by Robert of her attorney fees in connection with this appeal. Because we have found that the action in the trial

814

court did constitute a proceeding under the Act, this appeal does come under section 508(a)(3) of the Act, which allows the award of attorney fees for "[t]he defense of an appeal of any order or judgment under this Act." 750 ILCS 5/508(a)(3) (West 1996); *In re Marriage of Powers,* 252 Ill. App. 3d 506, 508, 624 N.E.2d 390, 392 (1993). Sara is free to file her petition and requires no remand from this court to do so. Such an award rests, of course, within the sound discretion of the trial court.

## CONCLUSION

For the foregoing reasons, we hold that the trial court did have subject-matter jurisdiction over this matter; that section 508 does allow the recovery of attorney fees incurred in the defense of a lawsuit for the purpose of enforcing an order entered in a dissolution proceeding; and that the trial court, in its discretion, properly ordered that Robert reimburse Sara for attorney fees by means of monthly installments. The judgment of the trial court is affirmed.

Affirmed.

STEIGMANN, P.J., and KNECHT, J., concur.