NOTICE
Decision filed 05/27/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 150222

NO. 5-15-0222

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| LESLIE N. CROUCH, f/k/a Leslie N. Smick, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 09-D-544 |
| GABRIEL B. SMICK, | ) ) ) | Honorable Philip B. Alfeld, |
| Respondent-Appellant. | ) | Judge, presiding |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Presiding Justice Schwarm and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    On January 8, 2015, the attorney for the respondent, Gabriel Smick, filed a petition for attorney fees pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/508 (West 2012)). On April 14, 2015, the trial court denied the petition. On April 21, 2015, Gabriel filed a motion to reconsider or for a Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) order allowing an interlocutory appeal. On May 15, 2015, the trial court entered an order denying the motion to reconsider. The court found that section 508 of the Marriage Act did not apply

1

to termination and adoption proceedings. It held that the "American Rule" applied and that each party must bear his or her own attorney fees and costs. The court entered a finding under Rule 304(a) allowing for an interlocutory appeal. Gabriel filed a timely notice of appeal. We reverse and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3     Leslie and Gabriel married on June 4, 2005. Two children were born of the marriage: Xander Y. Smick, born August 30, 2006, and Wilhemina Smick, born July 9, 2008. In April 2009, Gabriel suffered a series of strokes that left him wheelchair-bound and unable to communicate.

¶ 4     On June 1, 2009, Leslie filed a petition for dissolution of marriage. Gabriel filed a counterpetition for dissolution of marriage. On July 8, 2010, the circuit court of Madison County entered a judgment of dissolution awarding Leslie legal, physical, and residential custody of the minor children and Gabriel visitation rights.

¶ 5     On December 22, 2010, Leslie filed a motion to divest jurisdiction pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act (Uniform Child-Custody Act) (750 ILCS 36/101 *et seq.* (West 2010)). She alleged that she and the children relocated to Missouri to be closer to her job; that, due to Gabriel's disability, he was not actively involved in the children's lives; that substantially all of the evidence concerning the children's care, protection, training, and personal relationships was in Missouri; and that she and the children no longer had any significant connection with the State of Illinois. Gabriel filed an objection to the motion to divest jurisdiction. On April 13, 2011, the court denied the motion.

¶ 6    On August 1, 2011, the court entered a consent order granting Leslie the right to remove the children to California and modifying the visitation order. This was the first modification of the judgment of dissolution. Gabriel was granted visitation with the children on Thanksgiving, Christmas, New Years, and spring break in alternating years, and four consecutive weeks of visitation with the children starting in the summer of 2012. In November 2011, Leslie married Daniel Crouch.

¶ 7    On February 27, 2013, Leslie and Daniel filed a petition in San Diego County, California, to free the children from Gabriel's custody and control, alleging that he was developmentally and physically disabled or mentally impaired and was not capable of supporting or controlling the minor children in a proper manner. Daniel filed a companion petition for adoption. On April 15, 2013, Gabriel filed a motion to clarify and retain jurisdiction in Illinois.

¶ 8    On May 29, 2013, Gabriel filed an emergency motion to enforce the visitation agreement and for a rule to show cause. He asserted that Leslie texted him that she would not allow further visitation pending resolution of the petition she filed to terminate his parental rights. He requested that the court issue a rule to show cause why Leslie should not be held in contempt for threatening not to comply with the visitation order and for an order directing her to comply with the visitation order. On May 31, 2013, the court entered an order stating that "[e]xcept as specifically modified by the agreed order entered on August 1, 2011, the Judgment of Dissolution remains in full force and effect."

¶ 9    On June 24, 2013, Gabriel filed a motion for a rule to show cause. He alleged that Leslie refused to transport the children to Illinois to exercise visitation with him. He

asked that the court issue a rule to show cause why Leslie should not be held in contempt for failing to comply with the visitation agreement and for an order directing her to comply with the orders of the court and establishing an alternative visitation agreement.

¶ 10    On September 20, 2013, the Illinois trial court entered an order finding that it had exclusive jurisdiction over the parties and subject matter concerning the custody of the children.  It found that it had no jurisdiction to hear Daniel's petition for stepparent adoption filed in California.  The court determined that the petition to free the minor children from Gabriel's custody and control would be decided in accordance with California law.  The court requested that the Superior Court of California consent or transfer the pending petition to free the minor children from Gabriel's custody and control to the Illinois court.  The court held that the interests of comity and judicial economy indicated that the petitions for rule to show cause and the petition to free the minor children from Gabriel's custody and control be heard at the same time.

¶ 11    The court in California also entered an order on September 20, 2013.  The court held that Illinois remained the home state because Gabriel still resided there.  The court found that Leslie's petition to terminate Gabriel's parental rights must be heard in the Madison County circuit court, but the court would apply California law in reaching its decision.

¶ 12    On October 15, 2013, Gabriel filed a supplement to the motion for a rule to show cause alleging that the June 24, 2013, motion for a rule to show cause prompted Leslie to cooperate to a limited degree with his right to visitation.  He stated that she allowed him one week of visitation with his daughter and two weeks of visitation with his son, as

4

opposed to the four consecutive weeks of visitation during the summer he was granted in the agreed visitation order. He further asserted that, in a letter dated September 19, 2013, Leslie denied him communication with his children by precluding his father and power of attorney from coordinating and setting up the communications, which effectively terminated his ability to communicate with his children in violation of the agreed visitation order.

¶ 13    On November 18, 2013, Leslie filed a motion for stay of visitation and stay of proceedings asking the court to stay any proceedings concerning custody and visitation until the proceedings to declare the minor children free from parental custody and control were resolved. On November 20, 2013, Gabriel filed a response to Leslie's motion for stay of visitation and stay of proceedings. On November 21, 2013, the court entered an order denying Leslie's motion to stay visitation finding that "no useful purpose would be gained by denying such visitation."

¶ 14    On April 2, 2014, Gabriel filed an emergency motion to enforce the visitation agreement and for a rule to show cause. He argued that Leslie sent him a letter dated March 31, 2014, informing him that she would not allow visitation pending resolution of her petition to terminate his parental rights. He asked the court to issue a rule to show cause why she should not be held in contempt for threatening not to comply with the visitation order and for an order directing her to comply with the visitation order. The court heard the motion and ordered that Gabriel's April visitation with the children was to be replaced by an additional week of visitation in the month of June and that it was "in addition to any other scheduled visitation that might have been or shall be ordered."

¶ 15    The case was tried on May 5 and 6, 2014.  During the trial, the court applied California substantive law.  On June 2, 2014, the Illinois court entered an order declaring the children free from the custody and control of Gabriel.  It also found that termination of Gabriel's parental rights was in the children's best interests and that adoption would provide stability in their lives.  On June 2, 2014, Gabriel filed a motion to reconsider.  On June 9, 2014, Gabriel filed a motion to stay the order terminating parental rights pending the resolution of the posttrial motion and appeal.  That same day, he filed a motion to enforce visitation asking the court to enforce the existing visitation order.  On July 3, 2014, Leslie filed a response to the motion to reconsider.  On July 7, 2014, the motion to reconsider was denied.  Gabriel filed a timely notice of appeal.

¶ 16    In *Crouch v. Smick*, 2014 IL App (5th) 140382, ¶ 28, this court found that the trial court erred in holding a trial based on California pleadings and California law because if Illinois had been found to be the home state under the Uniform Child-Custody Act, the court had necessarily found that Illinois had the most significant contacts for custody decisions, and Illinois law applied.  This court reversed the judgment of the trial court and remanded the matter to give Leslie the opportunity to file a petition to terminate parental rights in the Illinois court.

¶ 17    On January 8, 2015, Gabriel's attorney filed a petition for attorney fees pursuant to section 508 of the Marriage Act.  He requested $14,900 in attorney fees and $187.22 for costs and expenses incurred representing Gabriel in the proceeding initiated by Leslie to terminate Gabriel's parental rights and for Daniel to adopt the children and to enforce visitation.  He asserted that, because the action was filed in California, Gabriel had to

6

retain California counsel and incurred fees to them in the amount of $9,273.98. Gabriel also paid $2,000 in attorney fees for his appeal and $1,685.20 for court reporter transcripts. He requested an order directing Leslie to pay all of these fees.

¶ 18   On March 3, 2015, Daniel and Leslie filed a petition, in the original dissolution case, for related parent adoption in the circuit court of Madison County.

¶ 19   On April 14, 2015, the trial court denied the petition for attorney fees "based upon the American Rule." On April 21, 2015, Gabriel filed a motion to reconsider or for a Rule 304(a) order, allowing an interlocutory appeal.

¶ 20   On May 11, 2015, the trial court heard arguments on the motion to reconsider. On May 15, 2015, the trial court entered an order denying the motion to reconsider. It found that the case was brought as a petition to terminate parental rights and for adoption, which was a proceeding independent of the dissolution. It noted that a petition to terminate can only be brought within an adoption or juvenile proceeding and that section 508 of the Marriage Act does not apply to termination of parental rights and adoption. The court found that the Adoption Act does not have a provision authorizing the award of attorney fees and, therefore, applied the "American Rule" that each party be responsible for his or her own respective attorney fees. The court made the necessary finding to allow for an interlocutory appeal under Rule 304(a). Gabriel filed a timely notice of appeal.

¶ 21                                            ANALYSIS

¶ 22   Gabriel argues that the trial court erred in denying his petition for attorney fees pursuant to section 508(a) of the Marriage Act. Gabriel asserts that the attorney fee

7

provision of the Marriage Act applies to proceedings to enforce his visitation rights and extends to the defense of parental fitness and termination of parental rights as part of a related child adoption. Gabriel limits his arguments to the situation in which there is a related child adoption as defined in section 1(B) of the Adoption Act (750 ILCS 50/1(B) (West 2012)) where a stepparent is petitioning for adoption by virtue of being married to one natural parent, who is required to join the adoption suit under section 2 of the Adoption Act (750 ILCS 50/2 (West 2012)), while trying to terminate the parental rights of the other natural parent.

¶ 23 Section 508 of the Marriage Act (750 ILCS 5/508 (West 2012)) governs attorney fees in postdecree dissolution proceedings. *Blum v. Koster*, 235 Ill. 2d 21, 45 (2009). Section 508(a) provides in pertinent part:

"(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. *** Awards may be made in connection with the following:

***

(2) The enforcement or modification of any order or judgment under this Act.

* * *

(6) Ancillary litigation incident to, or reasonably connected with, a proceeding under this Act." 750 ILCS 5/508(a)(2), (6) (West 2012).

8

¶ 24 This court reviews the construction and application of a statute *de novo*. *Blum*, 235 Ill. 2d at 44. In construing a statute, the primary objective is to ascertain and give effect to legislative intent. *Id.* In determining the meaning of a statute, the court considers the plain and ordinary meaning of the statutory language, the statute in its entirety, the subject it addresses, and the intent of the legislature in enacting it. *Id.*

¶ 25 "Illinois normally follows the 'American Rule,' which stands for the proposition that a party is responsible for his or her own attorney fees." *In re Marriage of Pal*, 397 Ill. App. 3d 903, 910 (2010). In enacting section 508 of the Marriage Act, the legislature abrogated the "American Rule" in dissolution proceedings so that a spouse with greater financial resources would not have an unfair advantage. *Id.*

¶ 26 Attorney fees and costs may be awarded for services rendered to enforce any order or judgment under the Marriage Act. 750 ILCS 5/508(a)(2) (West 2012). Gabriel filed numerous petitions to enforce his visitation rights, and the trial court never awarded attorney fees in those actions. The proceedings to enforce visitation are clearly the type of proceedings for which an award for attorney fees may be granted under the Marriage Act.

¶ 27 On July 8, 2010, the court entered a judgment of dissolution, dissolving Leslie and Gabriel's marriage. On August 1, 2011, the trial court granted Leslie's motion for leave to remove the children to California and modified the visitation order. This was the first modification of the judgment of dissolution.

¶ 28 On February 27, 2013, Leslie and Daniel filed a petition in California to free the children from Gabriel's custody and control and a companion petition for adoption. Once

9

these petitions were filed, Leslie refused to fully cooperate with the existing visitation order forcing Gabriel to take steps to enforce the order. On May 29, 2013, Gabriel filed an emergency motion to enforce the visitation agreement and for a rule to show cause. He alleged that he consistently abided by the terms of the modified visitation order and cherished the limited time he spent with his children and that on May 23, 2013, Leslie informed him that she would not allow any further visitation pending the resolution of the petition she filed in California to terminate his parental rights.

¶ 29    On June 24, 2013, Gabriel filed a motion for rule to show cause, alleging that he was entitled to visitation pursuant to the modified visitation order and that Leslie refused to transport the children to Illinois to exercise visitation with him pursuant to the visitation order. On October 15, 2013, Gabriel filed a supplement to the motion for rule to show cause. He alleged that the filing of his June 2013 motion for rule to show cause prompted Leslie to cooperate to a limited extent with the visitation order and that, because of her interference, he only received one week of visitation with Wilhemina and two weeks of visitation with Xander as opposed to the four-week summer visitation provided for in the visitation order. Additionally, he alleged that on September 19, 2013, Leslie wrote him a letter prohibiting his father from coordinating and setting up communication between him and the children, which he asserted had, in effect, terminated his ability to communicate with the children in violation of the visitation order, which provided that "each party shall be provided reasonable telephonic contact with the minor children while in the custody of the other parent."

10

¶ 30  On November 18, 2013, Leslie filed a motion for stay of visitation and stay of proceedings asking the court to stay any proceedings concerning custody or visitation until the proceedings to declare the minor children free from Gabriel's parental custody and control were resolved.  Gabriel filed a response to the motion for stay of visitation and stay of proceedings.  On November 21, 2013, the court entered an order denying Leslie's motion to stay visitation and finding that no useful purpose would be gained by denying visitation.

¶ 31  On April 2, 2014, Gabriel filed an emergency motion to enforce the visitation agreement and for a rule to show cause alleging that Leslie would not allow visitation over spring break from April 5 through April 12, 2014, or any additional visitation pending the hearing and ruling on the termination of his parental rights.  The trial court entered an order that the spring break visitation was to be replaced with an additional week of visitation in the month of June.

¶ 32  The trial court subsequently entered an order terminating Gabriel's parental rights, and on June 9, 2014, he filed a motion to reconsider and an appeal.  The same day, he filed a motion to enforce the visitation order asking the court to require that the visitation order be followed pending the outcome of posttrial proceedings.  On January 8, 2015, Gabriel filed an emergency motion to enforce the visitation agreement and for a rule to show cause.  He alleged that this court's reversal of the trial court's decision terminating his parental rights under California law and remanding for further proceedings preserved his parental rights and the existing court orders.

11

¶ 33    Gabriel consistently exercised his visitation rights under the original and modified dissolution judgments.  Once Leslie and Daniel initiated the actions to terminate Gabriel's parental rights and for adoption, Leslie would not allow visitation, and Gabriel was forced to fight vigorously to maintain visitation with his children.   Under section 508(a)(2) of the Marriage Act, the court may order a party to pay attorney fees for the enforcement of any order or judgment under this Act.  The circuit court erred in refusing to consider Gabriel's claim for attorney fees incurred to enforce his right to visitation with his children under section 508(a)(2) of the Marriage Act.

¶ 34    Leslie argues that, because her petitions to terminate Gabriel's parental rights and for adoption were not proceedings under the Marriage Act, section 508 authorizing the trial court to award attorney fees and costs in actions under the Marriage Act does not apply.

¶ 35    Section 508 has two separate provisions that authorize attorney fee awards for proceedings to enforce an order or judgment under the Marriage Act.   750 ILCS 5/508(a)(2), (b) (West 2012).  Under section 508(a), the trial court can, in its discretion, award attorney fees after considering the relative financial resources of the parties.  *In re Marriage of Davis*, 292 Ill. App. 3d 802, 811 (1997).  Under section 508(b), the award of attorney fees is mandatory upon a finding that the failure to comply with the order was without justification or cause.  *Id*.

¶ 36    In *In re Marriage of Kent*, 267 Ill. App. 3d 142 (1994), the court addressed the availability of section 508 fees in collateral proceedings.  The couple's marriage was dissolved on January 11, 1991.  *Id*. at 143.  The dissolution incorporated a property

12

settlement, in which the husband agreed to pay the wife $20,000 in exchange for her share of equity in their home. *Id.* On March 31, 1992, the husband filed a petition for bankruptcy in bankruptcy court, listing the wife as a creditor. *Id.* On April 10, 1992, he filed an adversary complaint in bankruptcy court against the wife, seeking to discharge his obligation to pay the $20,000 owed pursuant to the settlement agreement. *Id.* The wife retained the services of her attorney to represent her in the bankruptcy proceedings. *Id.* On July 12, 1993, the wife filed a petition for attorney fees incurred in the bankruptcy proceedings, asking that the husband be required to pay her attorney fees pursuant to section 508 of the Marriage Act. *Id.* at 143-44. The husband filed a motion to strike the petition, arguing that the trial court did not have jurisdiction to award attorney fees incurred in bankruptcy proceedings, and the court granted the motion to strike. *Id.* at 144. The wife appealed, and the appellate court held that the mere fact that the fees were incurred in a federal court did not remove the fees from the purview of the statute. *Id.* The court found that the plain meaning of section 508(b) of the Marriage Act allowed recovery of fees incurred in any proceeding that has as its goal the enforcement of an order or judgment entered in a dissolution proceeding. *Id.* The court found that the trial court had jurisdiction to award attorney fees pursuant to section 508(b). *Id.* at 145.

¶ 37    In *In re Marriage of Davis*, 292 Ill. App. 3d at 808, the court examined whether section 508 of the Marriage Act was applicable to collateral proceedings incurred defending a separate civil lawsuit in a different court. The parties divorced in 1988, and, in 1990, a supplemental order was entered characterizing a $67,800 debt as a business loan and allocating it to the husband. *Id.* at 804-05. On September 13, 1991, the bank

filed suit against both parties for nonpayment of the loan. *Id*. at 805. On October 18, 1991, the husband filed bankruptcy and was later dismissed from the bank's lawsuit, which proceeded against the wife. *Id*. The court found the wife not liable on the business loan. *Id*. The husband moved to voluntarily dismiss his bankruptcy case, secured a loan from another bank, and paid the business loan in full. *Id*. The wife filed a petition, asking the court to order the husband to pay her attorney fees for the bank lawsuit. *Id*. The trial court entered an order, finding that it had subject-matter jurisdiction under section 508 of the Marriage Act, that fundamental fairness required the husband to reimburse the wife for the attorney fees, that the wife lacked the financial resources to pay the debt, and that the husband was able to pay the fees if given sufficient time. *Id.* at 806. The husband appealed.

¶ 38    The appellate court held that "*Kent* clearly supports the proposition that it is the purpose, not the location, of the proceeding that determines whether section 508 of the [Marriage] Act applies." *Id*. at 809. The court found that the wife did not initiate the proceeding in another court; she merely defended her interests under the terms of the supplemental order. *Id*. at 810. The court held that an award of attorney fees under section 508 of the Marriage Act may be made for expenses incurred in connection with a proceeding to enforce the provisions of a dissolution order, even if that proceeding occurs in a different court. *Id*. The court found that enforcement means giving effect to the terms of the order in collateral litigation. *Id*. at 811. The court found that because the wife's claim was based on enforcement of the original order, her attorney fees were not merely incidental expenses, but were specifically allowed by statute under certain

circumstances. *Id.* The court found that section 508(a)(2) was the proper provision under which the wife's petition for attorney fees should have been considered. *Id*. at 811-12.

¶ 39 Once Leslie and Daniel filed a petition in California to free the children from Gabriel's custody and control and a companion petition for adoption, Gabriel was forced to defend it. An order of adoption relieves the natural parent of all parental responsibilities for the child and deprives him of all parental rights with regard to the child. *In re Adoption of Schumacher*, 120 Ill. App. 3d 50, 52 (1983). Adoption constitutes a complete and permanent severance of all legal and natural rights between the biological parent and the child. *In re M.M.*, 156 Ill. 2d 53, 62 (1993). "Included in the biological parents' severed bundle of rights is the right to visitation, which is a form of custody." *Id*. An order terminating parental rights also relieves a natural parent of responsibility for his child and deprives him of all legal rights to the child. 750 ILCS 50/17 (West 2012).

¶ 40 The parties' judgment of dissolution sets out the rights and responsibilities of each biological parent to his or her children. If Gabriel's parental rights are terminated, he will be deprived of all legal rights to his children including his right to visitation, which is a form of custody. This constitutes the ultimate modification of his visitation rights.

¶ 41 Leslie and Daniel's filing of the petitions to terminate Gabriel's parental rights and for adoption forced Gabriel to incur legal fees in California and Illinois to enforce his rights under the judgment of dissolution and to fight to prevent his rights from being modified by termination. Section 508 allows the recovery of attorney fees for expenses incurred in any proceeding to enforce an order or judgment entered in a dissolution

15

proceeding, even if that proceeding occurs in collateral litigation. *In re Marriage of Kent*, 267 Ill. App. 3d at 144. Section 508(a)(2) provides that attorney fees may be awarded in connection with actions to enforce or modify any order or judgment under the Marriage Act. 750 ILCS 5/508(a)(2) (West 2012). Gabriel did not want to give up his rights to his children, and he did not want to modify his visitation rights. Gabriel's attorney fees incurred in defense against actions brought by Leslie and Daniel were efforts to enforce the judgment of dissolution. Thus, in this case, where there was a petition for a related adoption where the dissolution judgment set out the rights of the natural parents, attorney fees may be awarded under section 508(a)(2) because the petition to terminate parental rights seeks to modify the natural parent's rights by termination, and the fees were incurred to enforce and prevent the modification of the dissolution judgment.

¶ 42 Attorney fees and costs may be awarded in connection with ancillary litigation related to a proceeding under the Marriage Act. 750 ILCS 5/508(a)(6) (West 2012). While this court could find no cases directly on point, the court has awarded ancillary fees where fees are reasonably related to the divorce matter.

¶ 43 In *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 154 (2004), the appellate court considered whether the trial court erred in assessing attorney fees against the husband pursuant to the judgment for dissolution of marriage for an attorney appointed to represent a child during domestic violence proceedings. Two children were born during the pendency of the couple's marriage. *Id*. at 147. The husband was not the biological father of the youngest child. *Id*. A guardian *ad litem* was hired to represent the youngest

16

child.  *Id*.  The trial court entered a judgment of dissolution awarding sole custody and control of the oldest child to the husband and incorporated an agreement for sibling visitation into the judgment for dissolution of marriage.  *Id*. at 148.  There were numerous proceedings related to the custody of the youngest child and her visitation with the husband.  *Id*. at 154.  The husband filed a petition for an order of protection on behalf of himself and the two children.  *Id*.  The court granted the husband's request for the appointment of a child representative to represent the youngest child's best interest.  *Id.* Following a hearing involving the care and custody of the youngest child, the trial court denied the husband's petition for a plenary order of protection.  *Id.*  The child's representative filed a petition for attorney fees and costs pursuant to section 506(b) of the Marriage Act (750 ILCS 5/506(b) (West 2002)), which provides that a child's representative shall be entitled to fees.  *In re Marriage of Nienhouse*, 355 Ill. App. 3d at 155.  The judgment for dissolution incorporated an order awarding fees and costs to the attorney and assessing the fees against the husband, and the husband appealed.  *Id*.  The appellate court held that section 508(a)(6) of the Marriage Act specifically authorized the payment of fees in litigation reasonably connected with a proceeding under the Marriage Act.  *Id*.  The court found that the issues involved in the domestic violence proceeding were reasonably connected with the dissolution action for purposes of authorizing payment of these fees.  *Id*.

¶ 44    Attorney fees Gabriel incurred related to the petition to free the children from his custody and control and for adoption filed under California law and the petition for related parent adoption filed under Illinois law were incurred in an effort to maintain his

17

parental rights under the judgment of dissolution of marriage. "[I]t is the purpose, not the location, of the proceeding that determines whether section 508 of the [Marriage] Act applies." *In re Marriage of Davis*, 292 Ill. App. 3d at 809. The judgment of dissolution set out each biological parent's rights to the children including Gabriel's rights to visitation, which is a form of custody. Because the related child adoption litigation instituted by Leslie and Daniel sought to terminate Gabriel's rights as set forth in the Marriage Act order, the related child adoption litigation is reasonably connected with the Marriage Act order. Gabriel sought to enforce the judgment of dissolution and fought to prevent Leslie and Daniel from modifying the judgment to the ultimate degree by terminating his visitation and custody. Gabriel's attorney fees incurred to fight the petitions to free the children from his custody and control and for adoption filed under California law and the petition for related parent adoption filed under Illinois law were reasonably connected with proceedings under the Marriage Act and are subject to contribution under section 508(a)(6).

¶ 45                                    CONCLUSION

¶ 46    For the reasons stated, the judgment of the circuit court of Madison County is reversed, and the cause is remanded for a hearing on the petition for contribution of attorney fees, including the ancillary fees incurred in the defense of the related parent adoption petition.


¶ 47    Reversed and remanded.

18

2016 IL App (5th) 150222

NO. 5-15-0222

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| LESLIE N. CROUCH, f/k/a Leslie N. Smick, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 09-D-544 |
| GABRIEL B. SMICK, | ) ) | Honorable Philip B. Alfeld, |
| Respondent-Appellant. | ) | Judge, presiding |

_____

**Opinion Filed:**     May 27, 2016

_____

**Justices:**     Honorable Bruce D. Stewart, J.

          Honorable S. Gene Schwarm, P.J., and
          Honorable Richard P. Goldenhersh, J.,
          Concur

_____

**Attorney for Appellant**     Tim Kalinowski, Attorney at Law, 2 Butternut Lane, Glen Carbon, IL 62034

_____

**Attorney for Appellee**     Frederick M. Steiger, Steiger Law Offices, 215 South Main Street, Edwardsville, IL 62025

_____